3-0-9-0-4-0-8 People of the State of Illinois Appellate by Don Brachy v. Joseph Cichon Appellant by Douglas Harper Mr. Harper? Thank you, Reverend. Good morning, Your Honors. May it please the Court. My name is Douglas Harper. I represent the defendant appellant, Mr. Joseph Cichon. Your Honors, Mr. Cichon is currently incarcerated at Stateville Correctional Center. He's serving a sentence of 105 years. This matter was before the Court on the denial of his post-conviction petition by the Circuit Court, LaSalle County. And, Your Honors, if I can just give brief background regarding this matter. Mr. Cichon, in 1990 and 1991, was indicted for multiple offenses, which included criminal sexual assault and aggravated criminal sexual assault. In 1991, he was offered a plea of 25 years. And, at that time, he was represented by an attorney, Mr. Carl Telford. The plea was accepted. The Court thought that the plea was a good idea. Mr. Cichon thought the plea was a fair idea. The victims in the case actually submitted documentation to the Court. They thought the sentence was a good idea. And the State also thought the 25-year sentence was a good idea. And so, Mr. Cichon pleaded guilty in 1991 and began serving his sentence of 25 years. And thereafter, after the direct appeal process, he retained counsel. Mr. James Geis represented Mr. Cichon at that time. And Mr. Geis discovered that there was a conflict of interest between Mr. Cichon and the lawyer, Mr. Carl Telford, who handled that 1991 conviction on plea of guilty. And so, Mr. Geis, at that point, advised Mr. Cichon that Mr. Cichon had the option of challenging this 1991 conviction on plea of guilty without risking any additional increase in his sentence. And Mr. Geis actually sent Mr. Cichon a letter to that effect, which said that his risk in challenging this 1991 conviction on plea of guilty would be, at most, that he would receive the same 25 years if he went to trial and were convicted. Or, at most, the absolute worst-case scenario that Mr. Geis told Mr. Cichon he risked was 30 years. And so, Mr. Cichon wrote Mr. Geis back and confirmed, well, if this is my risk, then I'm certainly willing to take that risk. It's a small risk. And, in fact, Mr. Cichon was sentenced. He was not sentenced under truth in sentencing. He was sentenced with day-for-day credit. And so, the actual time that he would have served was only 12 and a half years. And so, with that clear instruction, he filed his post-conviction proceeding in the circuit court and challenged his conviction on plea of guilty. Now, just for a point of clarification, Your Honors, we are not now claiming in any way whatsoever that Mr. Cichon had a Sixth Amendment right to effective assistance of counsel based on those post-conviction proceedings that were commenced by Mr. Geis. This case is before the court on two ineffective assistance claims, but I just want to be as clear as possible. The ineffective assistance does not relate to Mr. Geis' performance regarding the post-conviction matter that he commenced to challenge the Telford proceeding. Yes, sir. Okay, so you agree that everything that's happened before your client got the plea was vacated the first time is irrelevant? Yes. Yes, it's completely irrelevant. It has nothing to do with the – well, it's irrelevant except that the letter which happened before, it's relevant to show Mr. Cichon's frame of mind and Mr. Geis' frame of mind, but it is not evidence of ineffective assistance. I hope I didn't give an unclear answer, Your Honor. But the letter that Mr. Geis sent that said, Mr. Cichon, you only risk receiving the same 25 years again, that letter was sent before, but we're not saying it's evidence of ineffective assistance. It simply makes it more likely than not that Mr. Geis continued to give that advice during the operative period which occurred in 1997, and I'm going to speed through that point shortly. But, Your Honor, did I answer your question? Yes, sir. All right, thank you. So there's no ineffective assistance claim against Mr. Geis at all? Oh, there is. Yes, Your Honor, there is. Based on – I'm sorry, based on what? Yes. The ineffective assistance by Mr. Geis is based on his representation of Mr. Cichon during a four-month period in 1997. And what happened is Mr. Geis commenced his post-conviction proceeding, and it was actually denied – not denied, it was dismissed by the circuit court, and it was appealed to this court. And this court issued a Rule 23 order which held that there was a conflict, and this court remanded the matter back to the circuit court to determine whether the conflict had been waived. And so, again, the only issue that was remanded back to the circuit court for further proceedings was the determination of whether or not the conflict of interest, the attorney-client conflict of interest between Mr. Cichon and Mr. Telford had been waived. If there had been a waiver, then Mr. Cichon would have – should have prevailed on the post-conviction challenge that was filed by Mr. Geis, the initial one. And so that was the only issue. So that brings us now to the remanded proceedings that took place in the circuit court. Yes, Your Honor. Okay. At some point – I'm just saying – at some point, Mr. Geis got your client unconvicted, right? Yes. Okay. Isn't that where we start all over again? I guess my point is, at any time before your client becomes unconvicted, what does anything Mr. Geis did not have to do with anything under the Post-Conviction Hearing Act? It's not related to the Post-Conviction Hearing Act. The claim that we're bringing relates to plea bargaining that occurred at the end of the post-conviction proceedings in 1997. After this court remanded the matter back to the circuit court for – to address the specific issue of whether or not the attorney-client – whether or not the conflict was waived. At that point, the State, during 1997, from January to May in 1997, while the post-conviction proceeding was still pending, the State began to plea bargain with Mr. Geis. Now, this is in 1997. Even before the plea – even before the court agrees to allow him to withdraw his plea? Yes, Your Honor. Well, actually, no. The plea was never withdrawn. What happened was, in May, the circuit court granted the post-conviction petition. There was no withdrawal of the plea. The 1991 plea was not withdrawn, but the post-conviction petition was granted. Okay. And it was vacated. Yes, and the 1991 conviction was vacated. Yes, Your Honor. Okay. And until it was vacated, there wasn't anything to plea on, right? There was no plea to bargain for. Until – the answer is yes. Before the plea was vacated, there was nothing to plea on, but the answer is also no, because there was something to bargain about, because the State made the decision to bargain. And it's solely in the State's power to make the decision, to make the election about whether they're going to plea bargain or not. Now, Your Honor, just to give further clarification, to my interest – I'm sorry, Your Honor. Yes, Your Honor. Once a judge has entered a sentence, the State can't go on and say, by the way, judge, we've agreed with the defendant. Two years later, the governor reduced that sentence. Correct. I completely agree. So, okay. But, Your Honor, here's what happened. In 1997, while the post-conviction proceeding was pending, before it had been ruled on, the State knew that it was going to lose. The State made the determination that it was going to lose that proceeding and all the charges would be reinstated. And so in advance of that, they began plea bargaining, meaning they offered Mr. Sikon the 25-year plea again. Now, when the State offered that 25-year plea, that triggered the Sixth Amendment right to counsel. They were simultaneous proceedings at that point. Okay. But to cut to the chase, after the post-conviction motion is granted, and so his conviction is vacated, he had another lawyer, right? Yes, he had Mr. Daniel Buick. He had, for this legal term, a do-over, okay? In other words, everything that happened before that is like, so what? Really? I mean, isn't it? Because now he's got a new lawyer, new advice, and the evidence was the lawyer at the State told him, hey, we're going to bring you up for 60 or 100 years, depending on which time, and his own lawyer warned him that, yeah, you could, his own lawyer testified that he told him that, hey, you could be looking at 100 years here. Your Honor, the facts that Your Honor have described are correct, but I would not characterize it as a do-over. And my reasoning is because when the Sixth Amendment right to counsel triggered, with Mr. Geis' advice, and when Mr. Geis told Mr. Sikon, reject that 25-year plea because you have nothing to lose, when that happened, that was an effective assistance. And I – Let me just attest to your theory. If somebody goes out and he's charged, and the State says, and he knows an indictment is imminent, they've already told him, you know, the grand jury's not working on an indictment for a hunting charge. Yes, sir. And then he – so he goes out and he hires himself a lawyer, and the lawyer says, don't worry, the best you can get is 10 years. And the State says, no, no, we're going to just give you more than that. So the indictment comes, and he goes out, he discharges that lawyer and hires a new lawyer. And the lawyer says, no, you can get more. He turns down a plea bargain because of the advice he got from the first lawyer that he's discharged that wasn't representing him in the new plea negotiations. You're going to see if you can rely on that as a Sixth Amendment argument to say that he was denied ineffective assistance to counsel because a lawyer that represented him even before the charges were filed in this case gave him bad advice? Where does that end? Well, Your Honor, the answer is it depends on what the facts actually show occurred in between the time of the first advice and the second advice. And that's one of the reasons why I cited the Morreale case. It's a pre-Strickland case, but in Morreale, there was a defendant who was told by a lawyer that he could plead guilty, and I believe he was told he could only receive probation. Well, that was wrong, and he pleaded guilty, and the sentence that he received was much more severe. Now, when he pleaded guilty, the circuit court actually admonished him correctly. But what our Illinois Supreme Court said, and this is pre-Strickland, but our Supreme Court said, well, even though he was admonished correctly by the circuit court, that was not sufficient to obliterate the incorrect advice that he received from his former counsel. So I submit to this court that if correct advice from a circuit court judge in open court is not sufficient to obliterate the incorrect advice, then certainly correct advice simply from another lawyer would also not be sufficient. Who was representing the defendant in that case at the time he pled? In Morreale? I believe he had two different lawyers. There was one lawyer who had handled the case initially, and there was some issue where there was another lawyer who came into the case, and there was some shuffling back and forth between courtrooms and some confusion. And I believe that was part of what the Supreme Court noted in its opinion. Well, let's jump ahead. Yes, sir. Because let's suppose you're right and that this was a violation of the Sixth Amendment right to counsel. Yes, sir. But then you've still got to have some prejudice, right? Yes. And after he gets out, the state offers him a new counsel. He's offered the same 25 years, offered the same deal. And with clear advice from his counsel, the son, you're looking at a lot more than 25 years, and he turned that down. So where's the prejudice? Well, Your Honor, I follow Your Honor's question. I have a two-part answer. First, I believe that the analysis Your Honor was suggesting continues to apply the notion of cure that the circuit court applied, where it separates the deficiency and the prejudice separately. My argument is that the deficiency and prejudice pertaining to Mr. Geis occurred together. Counsel, you have two minutes. Thank you. And so together, that amounts to ineffective assistance, which Morreale, even though it's pretty strictly addressed as something that's not curable. So once a lawyer gives you bad advice, you'll be able to get out of jail free card for the rest of your life? Where does that stop? No, Your Honor. But here, with the specific facts that we have, we know that when Mr. Butte came on, Mr. Sikon was still relying on that advice, and Mr. Butte knew that. And that brings me to my second issue of ineffective assistance, which related to Mr. Butte's advice. Mr. Butte knew that the 25-year plea was a good idea. He formed the opinion that Mr. Sikon should accept it. He went to the jail to convince him to, quote, not make a stupid mistake by turning it down. And he knew that Mr. Sikon was relying on a letter or something, but he knew also that Mr. Sikon told him. He thought his advice was wrong. And yet, when they were in court, Mr. Butte told the circuit court judge, don't admonish Mr. Sikon correctly about his risk. He said, I'll do it. Now, at that point, Mr. Butte actually knew, because it had happened only a few days before, that Mr. Sikon thought he was wrong and was not listening to his advice. And so that's our second claim of ineffective assistance. And so, Your Honor, even if we follow Your Honor's reasoning that there is cure that would have attached to Mr. Butte's representation, that also was ineffective. And it leaves Mr. Sikon serving a sentence on a plea where, having rejected a plea, if he had received correct advice, he would have accepted that 25-year sentence in 1997. But again, he ultimately received correct advice, and he still rejected it. You're talking about from Mr. Butte? Yes. Yeah. Ultimately, he received correct advice from Mr. Butte. That doesn't seem to be disputed. Correct, Your Honor. That's not disputed. And he still rejected the plea. Yes. But again, what the facts show, and this is from Mr. Butte's own testimony and Mr. Cappellini's own testimony, is that Mr. Sikon was relying on Mr. Butte's former advice. And so, because Mr. Butte knew that his client was rejecting this favorable plea because he misunderstood his risk, the ineffective assistance, the deficiency, the performance that no reasonably effective lawyer would have engaged in was the interference with the circuit court's admonishment. Isn't the gist of Mr. Butte and Mr. Cappellini's testimony that the reason why Mr. Sikon rejected the plea was because he thought that he would be found not guilty by reason of insanity? And he was determined to go to trial? Yes, Your Honor. And let me add to this point, a defendant should be entitled to risk whatever unlikely defense he might hope to prevail on if he has been assured by his lawyer that there's no downside, as Mr. Sikon had been assured. The insanity plea, who knows what the percentage of success it might have had, but because Mr. Sikon had been assured in writing that there was no downside and that the circuit court could not impose a sentence greater than 25 years, well then, that explains why Mr. Sikon was willing to take that risk and try the insanity defense. He was told he had nothing to lose. And that was wrong advice. Yes, Your Honor. Go ahead. I have a factual question. Yes. You said earlier that the prosecutor offered a plea while the post-conviction proceedings were still going on near the end of them. Yes. Is that factual, or did they just discuss that if he did end up with his plea vacated, they would be offering 25 years, and if he didn't take that plea, then they would be going for the 120? To answer Your Honor's question, it is factual. The plea was offered in January. It's documented by Mr. Geis' memo to his file. And it's not only a plea that was offered in January, but it was offered again by Mr. Hewitt in May before the May 23rd proceeding where the petition was granted and the charges were vacated. Mr. Hewitt testified that he went personally to the jail to speak with Mr. Sikon and Mr. Geis so that Mr. Sikon could, quote, hear it from the horse's mouth. But hear that this is what was going to be offered if the plea were vacated or to make the offer right then. No, no. The offer was available then, and Mr. Hewitt testified at the stage three hearing that at that point when they met at the jail, the 25 years was, quote, still on the table. And so for it to be on the table, that means the offer was pending, it was available, there was a power of acceptance where Mr. Sikon could have said, yes, I'll take it. And Mr. Hewitt also testified at the stage three hearing before the charges were vacated that he made the decision that if Mr. Sikon rejected the plea, then he would reinstate the charges. And so, again, in order for him to decide what course – in order for Mr. Hewitt to decide what action he would take if the plea were rejected, which is his own testimony, then the plea had to have been on the table and available with a power of acceptance, which is consistent with what he said. And he also explained to him why he ought to take the 25 years in the sense of what he – what the prosecution was going to seek in terms of total length of sentence if they went to trial. Yes, he did. I mean, the motivation for it appears from the record – the motivation for the prosecution was to keep these little girls from having to come in and testify. Your Honor, I don't fault Mr. Hewitt's motive in any way whatsoever. And I don't mean to sound like I'm disparaging Mr. Hewitt, but I point to his behavior because it is one of the acts that triggers the Sixth Amendment right to counsel under Ballard where he is showing in – he has made the actual decision to reinstate charges. He's showing a significant level of prosecutorial involvement. That's the only reason why I focus on Mr. Hewitt's behavior in personally going to the jail. But also, Your Honor, telling Mr. – when Mr. Hewitt told Mr. Sikon what risk he faced, that had nothing to do with the post-conviction proceedings where the only issue that had been remanded by this Court was the determination of whether the attorney-client conflict had been waived. Well, neither did the plea negotiations have anything to do with the post-convictions. Correct, Your Honor. That's why it was a separate proceeding. They were simultaneous proceedings. The post-conviction matter that was remanded had nothing to do with the plea bargaining or the mention of what a favorable plea Mr. Sikon was turning down or the risk that he faced. Those were separate proceedings where the State was trying to obtain a conviction on the charges that would be reinstated. And, Your Honor, as I cited with the Boykin case, the conviction is not simply a confession. It is the judgment. And so by going to the jail, Mr. Hewitt was trying to obtain a judgment. These are acts to accuse under ballot, not merely to investigate. Question. Yes, Your Honor. Was Geis privately retained by your client for the post-conviction proceedings only? Yes, he was. Only. I'm sorry. Only? Yes, there was one retention. It contemplated the post-conviction matters. There was never a separate retention. If I can have a person in the audience question. There was never a separate retention regarding plea bargaining or... So how can he be ineffective in rendering advice that he wasn't hired to provide? Yes, Your Honor. Because the Sixth Amendment right to counsel does not depend on whether the client pays the lawyer to perform certain services. Right. But at that point in their representation, the matter arose and the lawyer, Mr. Geis, began performing that service. He told Mr. Hewitt... Yes, Your Honor. Hewitt was appointed as a public defender once charges were reinstated. Am I correct? Yes. This is May 29, 1997. Yes. The court appointed counsel is the attorney that rendered initially valid advice, saying you're wrong. You're facing more than 25. Yes. Mr. Butte advised that he faced at least 80 years. Yes. Okay. I don't know if it's going to make a difference, but I'm glad that you straightened those facts out in my... Yes, yes. But again, Your Honor, I emphasize that the fact of whether the lawyer is paid to perform the duty, that is what determines the Sixth Amendment right to counsel. I understand. I understand. And certainly, Mr. Sikon would not have known. Here's my lawyer, and he's representing me, but I'm only going to listen to his advice with regard to the matter for which he's been retained, but not for the matter where he's advising me to turn down... The criminal action had not been reinitiated at the time Geis was giving the separate advice on the anticipated negotiated agreement, and that's troubling me just a little bit. I understand, Your Honor, and that's correct. The criminal action was not reinitiated until the charges were vacated on May 23rd. I'm sorry, the conviction was vacated and the charges were reinstated. And until then, there was nothing to plead on, but it isn't the acceptance of the plea that triggers the right to counsel. It's the plea bargaining, the act of plea bargaining, and that's what the United States Supreme Court has said, and that's what our Illinois Supreme Court has said. It's when the state begins to plea bargain that it's bringing the governmental forces to bear and it's putting the defendant at risk, and that's when he needs the representation of his lawyer. And it is because the plea itself, it's not a confession. It's not a fact. It is the judgment of conviction. Thank you. If there are further questions, I'd be happy to address them. None right now. All right. We'll get a chance to say some more down in the bubbles. Thank you, Your Honor. Okay. Thank you. Ms. Duffy. Good afternoon, Your Honors. Mr. Harper, I thank you for your indulgence in setting this oral argument. I really wanted to see if the court had any questions about the first issue presented in the state's brief, which is that the Post-Conviction Hearing Act does not apply to the defendant's guilty plea proceedings prior to the date those guilty plea proceedings came to an end on May 23rd of 1997. The Post-Conviction Hearing Act applies to defendants who are incarcerated because of the proceedings which resulted in their conviction and sentence. That, in this case, is the defendant's jury trial and his sentencing. Once the defendant was granted post-conviction relief and allowed to withdraw his guilty plea, which is what he said he wanted, even knowing that the charges were going to be reinstated, that he might face mandatory consecutive sentences, and that he would be sentenced on the counts on which he was found guilty, he still persisted in telling Judge Ryan that he wanted to withdraw his plea. Once that happened, the parties were returned to status quo. It is as if, legally, those post-conviction proceedings, the appeal that took place in the interim on his post-conviction relief petition being denied, did not legally happen. We're back to square one. I know this Court's familiar with that law. On May 23rd of 1997, after the relief was granted, the relief the defendant sought, Mr. Geis successfully got his post-conviction petition granted and he was allowed to withdraw his guilty plea. Mr. Geis withdrew that day as counsel for the defendant. The judge set this case down for May 29th of 1997 for appointment of counsel. On that date, it was set for an arraignment. The charges had been reinstated, all 54 of them. Subsequently, there was a severance and he went to trial on 10 counts. But on that date, his trial counsel waived formal arraignment after he was appointed, that being Mr. Butte. Mr. Hewitt told Mr. Butte there was a plea offer open for seven more days, for seven days. I'll let him plead to 25 years, whether that means 10, 10, and 5, knowing they were mandatory consecutive sentences, but whatever would equate to 25 years imprisonment for seven days. Mr. Butte went to the jail more than once. Basically, what else could he have done but strong-arm this defendant into taking his guilty plea? He explained to him, you get 25 years, you get day-for-day good time credit, you do 12 and a half, you're done. You're stupid not to take this plea offer. The defendant wanted to go to trial. Mr. Hewitt, when he went to the jail with Mr. Geis, he testified that he did so because he wanted to make certain that the defendant understood the ramifications of the proceeding. That being, you withdraw this guilty plea, everything's back to where it was, the date you were indicted in the first place. If Mr. Sykon had taken the guilty plea after Mr. Butte had been appointed counsel for him, would he have been released at that point? He had already served more than 12 years. Oh, absolutely. Well, I think it's a 1990 case. I don't know that he ever made bond, and I did calculate at one time. I thought he would be released sometime in 2001, 2002. He would have served his sentence, but that's not what he wanted. He wanted a jury trial. He wanted to go to trial. Out of the four attorneys who testified at this post-conviction hearing, the two that represented him in these proceedings both stated that the defendant, they tried to get him to enter this guilty plea. All the way throughout proceedings, never, never did he change his mind. He wanted to go to trial. I told him he was making a stupid mistake, or in effect, be careful what you ask for. You just might get it. And this defendant is a prime example of that. It never occurred to him, I don't think you're going to be found guilty of these 10 counts. You could be found guilty of 54 counts. But he was told that. He was told he was looking at between 100 and 200 years imprisonment. I think the actual maximum was 120. The maximum non-extended term aggregate is 120 years. He was told that. This is not a stupid defendant. His attorneys testified that he's quite intelligent, that he knew what was going on in these proceedings all the way through them. If you have any questions on the second issue, I think the facts are quite clear. Judge Ryan conducted this evidentiary hearing. Only if his decision is against the manifest weight of the evidence should it be overturned. I think the manifest weight of the evidence is that this defendant was not denied the effective assistance of counsel at any of the proceedings. But nevertheless, I found no law which helped me out in deciding whether or not that issue of ineffective assistance of counsel of Mr. Geis in prior PC proceedings is even cognizable under the Post-Conviction Hearing Act. So this court may want to take the opportunity to decide that. Thank you very much. And I'm sorry, one more thing since counsel raised it. I'd point to the appendix in the defendant's opening brief. He has, it looks like, at appendix page 3A3. There's a letter from Mr. Geis to Mr. Sikon written May 11th, 1994. Where Mr. Geis says, Mr. Navarro was a state attorney at the time. He has told me that he will seek more time, assuming you're successful in vacating your convictions. What is the downside? What's the upside? The issues on the downside are you could end up with more time instead of less. That was in 1994. That's before the issue of the mandatory consecutive sentences became obvious in People v. Arna, which was decided later. I think there's two pages. He explains how there were in state certain counts for which he could be sentenced in addition to the maximum of 30 years on the aggravated criminal sexual assault. So the idea that Mr. Geis was wrong all the way along simply isn't the case. Thank you, Your Honors. Thank you. Mr. Harper, some rebuttal? Yes, Your Honor. I'll be brief. Your Honor, I'll try to limit myself to the points that were raised by Ms. Duffy. Beginning with the exhibit in my brief, exhibit number two, I respectfully assert that Ms. Duffy read the letter incorrectly. The letter does not say you could end up with more time. It says could you end up with more time. Mr. Geis was framing the issues. What it says, and I'll read it. This is right here. It's page A3. Mr. Geis says the issues on the downside are, one, could you end up with more time instead of less? And two, would you be physically moved around between Canton and Ottawa? So Mr. Geis was not saying you could end up with more time. He was simply framing the issue. Could you get more time? And then later he answers that question by saying, and I'm going to read now, when a conviction is set aside under the post-conviction statute, the court cannot impose a sentence more severe than the prior sentence unless the more severe sentence is based upon defendant's conduct occurring after the original sentence. Your Honors, that was wrong. And the fact that Mr. Geis gave wrong advice in 1994 makes it more likely than not that he continued to give it in 1997. And in fact, he testified that he continued to give wrong advice in 1997 when he told Mr. Sikon, you can reject it because it's the same sentence that you're currently serving. And so that was wrong advice that Mr. Geis continued to give. At the time that he originally gave him the advice in the 1994 letter, was that actually wrong in light of the current interpretation of the statute regarding concurrent and consecutive sentences? In 1994, was it wrong? Your Honor, I believe it was wrong then, but my analysis about whether it was wrong actually focused on the 1997 period, which is when the right to counsel actually attached. And it was wrong in 1997 under People v. Bohl, which made the law absolutely clear, as the Supreme Court later clarified in People v. McCoskey, that the change in the law, the change in the sentencing statutes made consecutive sentences available even though not mandatory, but they were available without regard to the date of the occurrence of the crime or whether the offenses were committed in multiple instances or single instances. Consecutive sentences were available either as mandatory consecutive or as discretionary consecutive. That was the law in 1997 when the plea was offered and when Mr. Geis told Mr. Sikon to reject it. And, Your Honor, I'd like to clarify that the State did, during their argument just now, offer an answer to Your Honor's question. Was it a fact that the plea was offered or was that simply a creative spin that we're putting on the facts? Yes, Your Honor, and I just wanted to point that out so that that matter is one less matter that's in dispute. With regard to the statutory interpretation by the Supreme Court, Mr. Butte and Mr. Cappellini and Mr. Hewlett all explained to Mr. Sikon that there had been a change of interpretation in the law with regard to mandatory consecutive sentences. Your Honor, I don't know that the record spells out that level of detail. They certainly advised Mr. Sikon that he risked 80-plus years and they certainly, Mr. Cappellini said he brought cases and they certainly advised him that he faced much more than 25. I don't know that they actually said the law has changed. But, Your Honor, the result that I am asking this Court to reach would be the same result even if they said that. Because, and the State bears it up better than I can, Mr. Butte and Mr. Cappellini were both in the jail trying to convince Mr. Sikon to accept this plea. They brought cases, they told him don't be stupid, to quote counsel, and they explained his risk and they knew that this is a defendant of above average intelligence. They knew that he had the power to understand. They knew he was relying on a letter or something. And they knew that he still believed that he only faced 25 years because of his reliance on this letter or something. Under those circumstances, it was ineffective for Mr. Butte to interfere with the circuit court and say don't admonish him, especially when Mr. Hewitt in open court on May 29th at the arraignment said, oh, by the way, Your Honor, at the last court appearance, I said Mr. Sikon faced only 60 years. That was wrong. He really faces 120 years. And then Mr. Hewitt turned to Mr. Butte and said that may make a difference about what he wants to do on the original 25. Mr. Hewitt was talking to Mr. Butte. He gave him a warning. Your client has been incorrectly admonished. What was he? He said he was relying not on that, but that he could only receive 25 or 30 years, he said. Mr. Sikon was. Yes. And by the way, just so we're clear, all of his advice from Geis came at a time before he was recharged. Yes, Your Honor. That's correct. That's correct. A different criminal proceeding, correct? I'm sorry. He hadn't been charged yet when he's getting this advice. He gets charged. He gets a new lawyer. In essence, we're starting all over again, right? No, it's a different proceeding, but that's the issue that's addressed in Ballard, where our Supreme Court breaks away from the United States Supreme Court's interpretation of the United States Constitution and says the right to counsel can trigger even before formal judicial adversarial proceedings are commenced. If either there's a significant level of prosecutorial involvement or there is a commitment to prosecution, that's our Supreme Court recognizing that. But you agree this is a statutory appeal under the Post-Conviction Hearing Act? Which is a statutory appeal? You're in front of this court today on a denial of a post-conviction petition. Yes, Your Honor. That's a statutory appeal? Yes. And that statute talks about appealing from irregularities, violations of whatever in the proceedings that led to your conviction. Yes, Your Honor. And whatever guys told him, you know, back when he was in jail, before his first plea was set aside, none of that contact led to his conviction. In fact, it led to his unconviction. Oh, Your Honor, I disagree. There were simultaneous proceedings. The post-conviction proceeding, none of that mattered. But when the state began to plea bargain, they began the Sixth Amendment right early. And that's consistent with Ballard. I see exactly what Your Honor is saying. I don't mean to paraphrase, but what Your Honor is saying is that before the charges were reinstated, none of that counts with regard to the Sixth Amendment violation. None of it was part of the proceeding, which brings me here today. And my answer is I disagree. It did count under Ballard because even though no formal judicial proceedings had been filed, the state was committed to prosecuting. They had made the decision to prosecute. And so what Ballard says is even though charges may not have yet been brought, the Sixth Amendment right is triggered at that point. And that's why I cite Ballard. And that's why I cite the detail about the two sets of alternative facts that establish the triggering of that. The Sixth Amendment right was triggered because of the commitment to prosecution and also it's either or. But here we have both. We have the commitment and we also have the actual decision to reinstate charges. And that's why I focus on Mr. Hewitt's visit to Mr. Saigon at the jail. It's a commitment to prosecution. It's a high level of prosecutorial involvement. And he testified. He actually made the decision to reinstate charges. That locks right in under Ballard, which notes those are the two factors, either the high level of involvement or the actual decision to reinstate charges. Is there a reasonable interpretation of what happened in the jail the first time? Did the prosecutor go in there and say, look, you can get this plea set aside, but you're just spinning your wheels because this is the best you're ever going to get. And because if you think. And so that explanation is opposed to just saying, you know, you ought to drop your post conviction petition the first time because it's never going to get any better. Well, if I'm understanding your honor correctly, if your honor was suggesting that the conversation at the jail was not a plea offer. Yes. All right. My response would be no, that's not what the facts show. The facts show that the conversation at the jail was a plea offer. And Mr. Hewitt said the 25 years is on the table. He wasn't. Yes, sir. Have you ever seen a case where a negotiation after a person's sentence is sentenced and convicted or convicted and sentenced and has been sentenced by a judge? And then the state's got no authority to negotiate a plea at that point. The person is sentenced. Yes, I have seen that. Yes. But that set of facts would not be relevant to what happened here because after the defendant is convicted, the Sixth Amendment right continues to attach throughout the direct appeal. But even if that Sixth Amendment right continued to attach, whatever poor advice he received from Dice, wasn't it cured when Hewitt stepped in? Absolutely not, your honor. There is no cure under Strickland. That's why I cite Fletcher. Fletcher says in the Strickland context, once we find deficiency, we must look at prejudice. That's what the circuit court did. The circuit court said, well, yes, there's deficiency. Judge Meyer actually found there was deficiency. But then he said, well, this is kind of looking cured. And the defendant didn't rely reasonably. And that is not the law. That's not what our United States Supreme Court has said we must do under Strickland. Once there is deficiency, the next part of the analysis requires a determination of prejudice. There is no cure. Mr. Crocker, this sounds like a technicality. But Mr. Sikon was already, he already stood convicted. Until his plea was vacated or withdrawn or something, there was no criminal proceeding on the table. I'm sorry, your honor. At what point in time now are we speaking? While the post-conviction petition proceedings are still going on. And before? When you're saying that the plea negotiations started. And I guess I'm asking, how can there be a plea negotiation when there is no unconvicted crime on the table? Yes, your honor. Absolutely. He was convicted at that point. And there was, your honor, the answer to your honor's question is that Mr. Geist testified at the stage three hearing. And Mr. Hewitt testified that they both had the understanding that if Mr. Sikon pleaded guilty, Mr. Hewitt would have worked it out so that Mr. Sikon would have come, so that the petition would have been granted. And then Mr. Sikon would have come back into court and pleaded guilty on whatever arrangement of charges Mr. Hewitt was going to put together, so that Mr. Sikon would stay 25 years again. And that was what they were discussing, even though at the point of the discussion, charges had not yet been reinstated. Yes. Because the original conviction had never been undone. He was still convicted. Yes, that's correct. And I know that puts the issue before the court. How can the man accept a plea on a matter which is not yet been reinstated, where charges have not yet been reinstated? And my answer is the Sixth Amendment right to counsel is not triggered by the ability of a circuit court to enter judgment. It is triggered by the plea bargain. And once the state, with its prosecutorial force, elects to offer the defendant a plea, and once the state, once the prosecutor puts its governmental stamp on that plea offer, that triggers the Sixth Amendment right to counsel. And I wish I could take credit for making up this argument, but it's not me speaking. This is what I, this is the law. Yes, Your Honor. Where does the prejudice occur when that offer stayed on the table for seven days after the new charges were filed? With regard to Mr. Butte? Yes. Where is the prejudice for Mr. Butte's representation? No, where is the prejudice to your client when that same offer of 25 years stayed on the table for seven days after the post-conviction petition was allowed and the new charges were reinstated, and your client got adequate advice from Mr. Butte? And if I understand you correctly, you're saying the only prejudice occurred because Mr. Butte didn't allow the court to admonish at that point? No, Your Honor. There were two separate instances of ineffective assistance. There were two separate instances of prejudice. With regard to Mr. Geis, he was deficient, and his deficiency caused prejudice before charges. How? Because it was just like I turned down the plea. Okay. You know, we're going a little long here. I apologize. Yes, Paul, please. You agree that when a judge, a trial judge accepts a plea, he's got to admonish about that, right? There's no law, wouldn't you create a new body of law that says now judges have to admonish people that turn down pleas? Oh, no. You got a plea agreement? No. Okay, well, let me admonish you about this plea agreement you don't have. That's not the law. No, Your Honor. I'm not asserting that, and that is not the law. Judges have a due process right to make sure that a defendant who is accepting a plea, there's a due process right to make sure that the defendant understands the right that he is waiving, which is the right to trial. The circuit court actually must make sure he understands. But with regard to a defendant who rejects a plea, there's no due process right. It's incumbent on the lawyer to make sure he has informed the defendant of the consequences of accepting or rejecting the plea. And the evidence was that happened? Yes, Your Honor. To answer Your Honor's question about the due process burden that would be placed on the court, there would be none with the argument that I'm asking the court to accept because the due process burden is only triggered if the defendant waives his right to trial and accepts the plea, and that's currently the law. But with regard to rejecting the plea, that's not a due process issue. But weren't you complaining that Mr. Butch messed up and violated the sixth amendment, right, when he didn't have the judge counsel him about, you know, admonish him about rejecting a plea? Yes, Your Honor. And that's – there's never been a law about any judge, trial judge ever, admonishing defendants about rejecting pleas. Your Honor, I am inclined to agree. I looked for a case of that sort. I didn't find it. And so that's why we are not claiming a due process violation. We're not claiming the circuit court committed error in failing to admonish Mr. Sykon. But Mr. Butch's interference with that admonishment was ineffective assistance on his part. It's conduct that no reasonably effective lawyer would have followed who actually knew that he had a client with a limited window for accepting a 25-year plea. The lawyer had actually formed the opinion that the client should accept it and not make a stupid mistake by rejecting it. He actually knew he was dealing with a client of above-average intelligence, and he actually knew his client was relying on a letter or something. So with all those facts and with the additional warning from the state where the prosecutor said to Mr. Butch in open court, at the last appearance I said your client faced 60 years, that was wrong. He really faces 120, and that may make a difference to you about whether you want to proceed on the original 25. Mr. Hewitt testified at the stage three hearing. He was warning Mr. Butch that he had, and I'm not saying Mr. Hewitt did this on purpose, the mistake about the time. I'm not saying that at all. In fact, I credit him for his candor in coming to court on the 29th and saying, look, I made a mistake. Previously I had said 60 years, that was wrong. Good for Mr. Hewitt. He was doing the right thing. That's what prosecutors should do. He should be credited for that. But when Mr. Hewitt said that and alerted Mr. Butch to the error, that puts Mr. Butch on notice, and that also was what triggered the circuit court to say, Judge Ryan to say, all right, I'll admonish him if you want. I'll go through the class acts. I'll go through the penalties. That's when Mr. Butch said, no, no, don't do that, Judge. I'll do it. And he actually knew that Mr. Sutton was. Which is his job as a defense lawyer. Not the judge's job, his job. But he knew he couldn't do it because only a few days before. Okay. We've gone. I think we've beat this horse enough. I think we've figured out. I appreciate the court's indulgence. Well, and thank you very much for your arguments today here, Mr. Harper. Thank you. Thank you both for your arguments. The matter will be taken under advisement. Written disposition will be issued in due course.